**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KRISTOPHER EMILLE FISHER,<br><br>　　　　　　Plaintiff,<br><br>　　　v.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social<br>Security,<br><br>　　　　　　Defendant. | Case No. CV 16-2680-JPR<br><br>**MEMORANDUM DECISION AND ORDER**<br>**AFFIRMING COMMISSIONER** |

**I.　PROCEEDINGS**

Plaintiff seeks review of the Commissioner's final decision denying his applications for Social Security disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"). The parties consented to the jurisdiction of the undersigned U.S. Magistrate Judge under 28 U.S.C. § 636(c). The matter is before the Court on the parties' Joint Stipulation, filed August 17, 2017, which the Court has taken under submission without oral argument. For the reasons stated below, the Commissioner's decision is affirmed.

## II. BACKGROUND

Plaintiff was born in 1972. (Administrative Record ("AR") 41.) He completed the 12th grade and has received his high-school diploma. (Id.) Through 2008, he worked as a bus driver, sales clerk, grocery clerk, and mail carrier. (AR 169.)

On October 30, 2012, Plaintiff filed applications for DIB and SSI, alleging in each that he had been unable to work since December 31, 2008 (AR 138, 145), because of depression, loss of memory, posttraumatic stress disorder, and anxiety (AR 163). After his applications were denied initially (AR 94-95), he requested a hearing before an Administrative Law Judge (AR 99). A hearing was held on April 24, 2014, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. (AR 35-69.) In a written decision issued on May 29, 2014, the ALJ found Plaintiff not disabled. (AR 20-34.) Plaintiff requested review from the Appeals Council, and on February 3, 2016, it denied review. (AR 1-7.) This action followed.

## III. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. See id.; Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla but less than a preponderance.

<u>Lingenfelter</u>, 504 F.3d at 1035 (citing <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." <u>Reddick v. Chater</u>, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for the Commissioner's. <u>Id.</u> at 720-21.

**IV. THE EVALUATION OF DISABILITY**

People are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or has lasted, or is expected to last, for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); <u>Drouin v. Sullivan</u>, 966 F.2d 1255, 1257 (9th Cir. 1992).

A. <u>The Five-Step Evaluation Process</u>

The ALJ follows a five-step sequential evaluation process to assess whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); <u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim must be denied. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine

whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, the claimant is not disabled and his claim must be denied. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity ("RFC")[1] to perform his past work; if so, he is not disabled and the claim must be denied. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The claimant has the burden of proving he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets that burden, a prima facie case of disability is established. Id.

If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not disabled because he can perform other substantial gainful work available in the national economy.

---

[1] RFC is what a claimant can do despite existing exertional and nonexertional limitations. §§ 404.1545, 416.945; see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). The Commissioner assesses the claimant's RFC between steps three and four. Laborin v. Berryhill, __F.3d__, No. 15-15776, 2017 WL 3496031, at *2 (9th Cir. Aug. 16, 2017) (citing § 416.920(a)(4)).

§§ 404.1520(a)(4)(v), 416.920(a)(4)(v); Drouin, 966 F.2d at 1257. That determination comprises the fifth and final step in the sequential analysis. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

B. The ALJ's Application of the Five-Step Process

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 31, 2008, the alleged onset date. (AR 26-27.) At step two, he concluded that Plaintiff had no physical impairments but had medically determinable mental ones: depression and PTSD. (AR 27.) Those impairments were not severe, however. (Id.) Plaintiff's depression and PTSD produced "only mild limitations" on his activities of daily living, social functioning, and ability to maintain concentration, persistence, and pace. (AR 30.) Thus, the ALJ concluded that Plaintiff was not disabled and did not proceed to the later steps of the sequential evaluation. (AR 30-31.)

**V. DISCUSSION**

Plaintiff argues that the ALJ erred in rejecting the credibility of his testimony because he failed to articulate clear and convincing reasons for doing so. (See J. Stip. at 4.) For the reasons discussed below, the ALJ did not err.[2] Moreover, Plaintiff does not challenge the ALJ's finding at step two that

---

[2] This claim is likely forfeited because Plaintiff never raised it to the Appeals Council. (See AR 216 (challenging only ALJ's rejection of treating doctor's opinion and his assessment of RFC)); see also Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999) (as amended); Shaibi v. Berryhill, __F.3d__, No. 15-16849, 2017 WL 3598085, at *6 (9th Cir. Aug. 22, 2017). Because Defendant has not raised waiver, however, the Court considers Plaintiff's claim on the merits.

5

his impairments were not severe. That finding mandates the conclusion that Plaintiff was not disabled. See Baxter v. Sullivan, 923 F.2d 1391, 1395 (9th Cir. 1991) ("If the impairment is not severe, the claimant is not disabled."). Because that finding may have been based in part on the ALJ's rejection of Plaintiff's symptom testimony, however, the Court construes Plaintiff's briefing liberally to include a challenge to it.

A.  Applicable Law

An ALJ's assessment of the credibility of a claimant's allegations concerning the severity of his symptoms is entitled to "great weight." See Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989) (as amended); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986) (as amended). "[T]he ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)).

In evaluating a claimant's subjective symptom testimony, the ALJ engages in a two-step analysis. See Lingenfelter, 504 F.3d at 1035-36; see also SSR 96-7p, 1996 WL 374186 (July 2, 1996).[3] "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment [that] could reasonably be expected to produce the pain or other

---

[3] Social Security Ruling 16-3p, 2016 WL 1119029, effective March 28, 2016, rescinded SSR 96-7p, which provided the framework for assessing the credibility of a claimant's statements. SSR 16-3p was not in effect at the time of the ALJ's decision in this case, however.

6

symptoms alleged." Lingenfelter, 504 F.3d at 1036. If such objective medical evidence exists, the ALJ may not reject a claimant's testimony "simply because there is no showing that the impairment can reasonably produce the _degree_ of symptom alleged." Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996) (emphasis in original).

If the claimant meets the first test, the ALJ may discredit the claimant's subjective symptom testimony only if he makes specific findings that support the conclusion. See Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010). Absent a finding or affirmative evidence of malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015) (as amended); Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014). The ALJ may consider, among other factors, (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties. Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1006 (9th Cir. 2015) (as amended); Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the ALJ's credibility finding is supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." Thomas, 278 F.3d at 959.

B. Relevant Background

Plaintiff has sought and received limited treatment for his mental impairments. The record contains no psychiatric or mental-health records from before 2012 even though his disability allegedly began in December 2008. (AR 138, 145.) In September 2012, Plaintiff received an "adult short assessment" at Augustus F. Hawkins Mental Health Center. (AR 218-20.) He reported depressive symptoms, paranoia, and an unspecified childhood trauma. (Id.) Afterward, he received follow-up medication support services in December 2012 and January 2013, through which he was prescribed medication for depression. (AR 222-24.)

In March 2013, Plaintiff was assessed at Harbor UCLA Medical Center, where he again reported suffering from depression. (AR 225-31.) In April 2013, he was interviewed by a Harbor psychiatrist, who diagnosed him with depression, noting his "flat affect," "anxiety," and feelings of "sad[ness], poor appetite, poor sleep/insomnia, [and] pain." (AR 232-38.) But the record does not contain any later Harbor treatment records except for consultations for foot and mouth issues. (See AR 301-12 (June 2013 tooth extraction), 279-90 (July 2013 tooth extraction), 291-300 (Aug. 2013 tooth extraction), 270-78 (same), 265-69 (Apr. 2014 foot sprain).)

In June 2013, Plaintiff received a complete psychological evaluation by the Department of Social Services. (AR 239-44.) Plaintiff complained of depression, anxiety, and PTSD and reported that he was sexually molested when he was young, that he could not keep a job, and that he was uncomfortable being around "a lot of people." (AR 240.) Plaintiff had never been

psychiatrically hospitalized, however. (Id.)  He took medication that "helped" him with his depression and anxiety and indicated that he was able to "take care of [his grandmother]," "manage his own funds," and "dress, bathe, shop and do household chores." (AR 240-41.)  He also had friends and "enjoyed" playing video games "most of the day."  (AR 241.)

As part of the evaluation, Plaintiff underwent psychometric testing.  (See AR 239.)  Though he completed a standardized questionnaire with "copious notations," he put forth "very little effort" on the test, "lowering his scores to within the borderline range."  (Id.)  The test results were noted to be an underestimation of his ability.  (AR 242.)  Plaintiff had organized, linear thoughts; moderately diminished memory; moderately diminished attention and concentration; and age-appropriate insight and judgment, responding "appropriately to imaginary situations requiring social judgment and knowledge of the norms."  (AR 241.)  The evaluation concluded that Plaintiff likely had dysthymia[4] and personality-disorder dependent traits. (AR 242.)  Despite a "mild inability to understand, remember and carry out detailed instructions," Plaintiff was found capable of "interact[ing] appropriately with supervisors, coworkers and peers," managing his own finances, and making simple "work-related decisions without special supervision."  (AR 243.)

At his April 24, 2014 hearing, Plaintiff testified that he

---

[4] Dysthymia is a "chronic mood disorder manifested as depression."  Stedman's Medical Dictionary 556 (27th ed. 2000); see also Types of Depression, PubMed Health, https://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0072472/ (last updated Jan. 12, 2017) ("chronic depressive disorder").

9

was no longer working because of his mental-health issues. (AR 45.) He testified that he sometimes had suicidal thoughts, did not like to be around a lot of people, and had trouble sleeping.[5] (AR 50-52.) He attributed his mental issues to his past abuse (AR 47) and testified that he intended to speak to his doctor about future therapy (AR 48). He also testified that he was living with his father, grandmother, and aunt (AR 42) and that he fed and bathed his grandmother and drove her to doctor's appointments after "getting her in the car" and later out (AR 43). In his own words, he provided "a lot [of] assistance" to his grandmother. (Id.)

Plaintiff's Adult Function Report and the Third-Party Function Report submitted by his sister, both completed on March 7, 2013, indicated that he took care not only of his grandmother but also his father. (AR 182, 191.) Plaintiff also apparently cared for his father's dog by himself in exchange for room and board. (Id.) The function reports stated that he had no problem with personal care (id.), prepared his own meals daily (AR 183, 192), and regularly went to church (AR 185, 194). His sister specifically noted that despite his "increased anxiety in public around strangers," Plaintiff did not "have any problems getting along with family, friends, neighbors, or others." (AR 195.)

---

[5] Plaintiff's testimony about his insomnia implied that it resulted from his depression. (See, e.g., AR 52 (attributing it to "nightmares" and his "stressful" situation).) But elsewhere the record shows that it actually occurred because his father, who was hard of hearing, watched TV "all night" with "very loud volume." (AR 191 (sister's function report); see also AR 182 (Plaintiff acknowledging in Adult Function Report that his father "keeps [him] up" at night, the only reason given for poor sleep).)

10

C. <u>Analysis</u>

The ALJ found that Plaintiff did not have a "severe mental impairment" in part because his allegations regarding the severity of his symptoms and his functional limitations were not fully credible. (AR 29-30.) Plaintiff argues that the ALJ failed to give clear and convincing reasons to support his credibility assessment. (J. Stip. at 4.) As discussed below, the ALJ's credibility assessment was based on specific, clear and convincing findings that Plaintiff's allegations were (1) unsupported by his medical records and (2) inconsistent with his daily activities.[6] (AR 29.) Accordingly, the ALJ did not err.

First, the ALJ correctly noted that Plaintiff not only had "very scarce" medical records (AR 28) but also "no treating record . . . showing any sustained course of psychiatric treatment" (AR 29). The ALJ, in great detail, evaluated Plaintiff's medical records, which established that his impairments were not severe. (<u>See</u> AR 27-30.) Plaintiff had only a few psychiatric assessments, with generally mild diagnoses therein, and lacked substantiating treatment records. (<u>See id.</u>) The ALJ in particular relied on the conclusions of Dr. Barbara Moura, a consulting psychologist who reviewed Plaintiff's medical

---

[6] Plaintiff initially argues that the ALJ used "oft rejected boilerplate language" to dismiss his testimony. (J. Stip. at 6-7.) Indeed, use of boilerplate language is disfavored, <u>see</u> <u>Laborin v. Berryhill</u>, __F.3d__, No. 15-15776, 2017 WL 3496031, at *3 (9th Cir. Aug. 16, 2017), and the ALJ arguably used some (<u>see, e.g.</u>, AR 29). But the ALJ specifically identified the testimony he found not credible and then provided several reasons supporting the finding. Thus, any use of boilerplate language was harmless. <u>See</u> <u>Laborin</u>, 2017 WL 3496031, at *3 ("[B]oilerplate language is not, by itself, reversible error and can be harmless.").

11

records and found his mental impairments to be mild. (AR 30.) Plaintiff has not challenged the ALJ's finding that Dr. Moura's opinion was entitled to "significant weight." (Id.) And Dr. Moura concluded that Plaintiff's depression was "currently nonsevere" given the lack of significant longitudinal history, his mild affective symptoms, and the poor effort he displayed in his psychological testing.[7] (AR 89.) She recounted Plaintiff's or his sister's statements that he had "no problem" with personal care, preparing meals, shopping in stores and by computer, counting change and handling bank accounts, and spending time at church with others. (See AR 87 (apparently referring to AR 182-86, 191-95).) Thus, to the extent that Plaintiff alleges his depression and PTSD reach disability-level severity, such allegations are not corroborated by his medical records.

Further, the ALJ properly found that Plaintiff had no sustained treatment. Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (ALJ may discount claimant's testimony in light of "unexplained or inadequately explained failure to seek

---

[7] The ALJ specifically noted that Plaintiff "put forth very little effort" on his June 2013 psychometric test, which artificially lowered his scores to within a borderline range of functionality. (AR 29; see AR 239, 242.) Though not explicitly tied to the assessment of Plaintiff's credibility, the finding relates to the consistency between Plaintiff's medical records and his testimony regarding his symptoms. Plaintiff's poor effort on his psychometric test was itself a legally sufficient and factually supported reason for discounting the credibility of his statements. See Thomas, 278 F.3d at 959 (ALJ properly considered claimant's "self-limiting behaviors" and "efforts to impede accurate testing" during two physical-capacity evaluations); Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001) (ALJ properly considered claimant's poor effort during consulting examinations in discounting her statements' credibility).

12

treatment or to follow a prescribed course of treatment"); see also Orn v. Astrue, 495 F.3d 625, 638 (9th Cir. 2007). The record indicates only that Plaintiff is on depression medication and may have attended psychotherapy sessions since 2013 that have been "minimally helpful." (AR 29.) Moreover, though Plaintiff appears to have suffered mental issues since childhood, no record of treatment seems to exist from before 2012, let alone from the time of the alleged disability onset date, December 31, 2008. Thus, substantial evidence supports the ALJ's finding that Plaintiff's testimony was not credible, and hence that his symptoms were not severe, in part because the lack of treatment records so indicates. See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."); Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."). The ALJ therefore properly found that Plaintiff's testimony concerning his symptoms was undermined by the lack of medical evidence to support it. See Womeldorf v. Berryhill, 685 F. App'x 620, 621 (9th Cir. 2017) ("[The ALJ] properly discounted [Plaintiff's] severity claims by pointing to . . . the nature of the medical evidence itself.").

Plaintiff argues that the ALJ's reliance on his lack of mental-health treatment was inappropriate because "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation."

13

(J. Stip. at 10 (quoting Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996).)  Nguyen, however, is distinguishable.  It involved an ALJ who discredited a psychologist's diagnosis of depression based on the lack of a treatment record, whereas here the ALJ relied on Plaintiff's lack of treatment records to discredit his claims as to the severity of his symptoms.  Moreover, even once Plaintiff apparently sought treatment in 2012, it was minimal.  The ALJ concluded that Plaintiff was mentally impaired by depression but reasonably found that the impairment did not meet the degree of functional limitation claimed.  Thus, without treatment records to indicate otherwise, and with the only functional assessments in the record showing mostly mild findings, the substantial weight of the evidence supports the ALJ's finding that Plaintiff's depression produced only mild limitations.  See Judge v. Astrue, No. CV 09-4743-PJW, 2010 WL 3245813, at *4 (C.D. Cal. Aug. 16, 2010) ("[The claimant's] failure to get treatment after 1997 seems more a function of the fact that she did not need it, as opposed to her inability to comprehend that she needed it.").

Second, the ALJ properly found that Plaintiff's activities of daily living were inconsistent with his claims of functional limitation.  (AR 29-30.)  An ALJ may properly discount the credibility of a plaintiff's subjective symptom statements when they are inconsistent with his daily activities.  See Molina, 674 F.3d at 1112.  "Even where those [daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."  Id. at 1113.

14

To the extent Plaintiff's symptom statements focused on his alleged inability to be around other people, substantial evidence in the record suggests otherwise. Plaintiff testified that he did not "like [being] around a lot of . . . people" (AR 51) and was "very [cautious] of others" (AR 187). But both Plaintiff and his sister said he was able to go out and shop, attend church and church outings, and apparently get along well with "family, friends, neighbors, and others" (AR 184-86, 193-94), suggesting that he was indeed able to be around people and function effectively. His June 2013 psychological evaluation similarly concluded that he was capable of interacting "appropriately with supervisors, coworkers and peers." (AR 243.) Thus, despite Plaintiff's statements of being anxious around others, substantial evidence in the record regarding his activities of daily living supports the ALJ's finding that such statements lacked credibility. See Womeldorf, 685 F. App'x at 621 (upholding ALJ's discounting of plaintiff's credibility in part because his activities of daily living "were not entirely consistent with his claimed inability to engage in social interactions").

Plaintiff also claimed that he was unable to work because of his "lack of productivity" (AR 44), which was in part because of his "passive attitude" and lack of motivation (AR 45; see AR 51). But this claim, too, lacked credibility given the record as a whole. Plaintiff testified that he was able to care for his grandmother and provide "a lot [of] assistance," apparently on an on-call basis. (AR 43.) He fed, bathed, and drove her to doctor's appointments, getting her in and out of the car. (Id.)

15

He also took care of his father and his father's dog in exchange for room and board. (AR 182, 191.) Plaintiff prepared his own meals every day, shopped in stores and by computer, handled money, played video games, and went to church. (AR 182-86, 191-95.) These daily tasks are inconsistent with Plaintiff's allegations that he was unable to be productive.

Plaintiff argues that despite his ability to help his grandmother, his activity is "far short of what is needed to demonstrate the capacity to perform work activity on a sustained basis." (J. Stip. at 11.) "[I]f a claimant engages in numerous daily activities involving skills that could be transferred to the workplace, the ALJ may discredit the claimant's allegations upon making specific findings relating to those activities." Burch, 400 F.3d at 681. While the ALJ could have explained his findings more fully, as discussed above, they were sufficient.

But even had the ALJ erred in his credibility determination, the error was likely harmless. See Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (nonprejudicial or irrelevant mistakes harmless). The VE testified that a person with "moderate limitation in dealing with co-workers, supervisors, and the general public" and "moderate limitation in attention[ and] concentration" — the most severe functional limitations appearing anywhere in the record — could perform jobs available in the economy. (AR 67-68.) Counsel did not challenge that testimony. Because the testimony took into account Plaintiff's alleged limitations and concluded he would nonetheless be able to work, any error in the ALJ's credibility determination was likely harmless. See Tommasetti, 533 F.3d at

1038 (9th Cir. 2008) (error is harmless when it is "inconsequential to the ultimate nondisability determination"); cf. Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 536 (6th Cir. 2001) (finding error harmless when ALJ did not discuss opinion of treating physician but VE took relevant limitations into consideration anyway).

For all these reasons, Plaintiff is not entitled to relief.

**VI. CONCLUSION**

Consistent with the foregoing and under sentence four of 42 U.S.C. § 405(g),[8] IT IS ORDERED that judgment be entered AFFIRMING the Commissioner's decision, DENYING Plaintiff's request for remand, and DISMISSING this action with prejudice.

DATED: September 5, 2017 

JEAN ROSENBLUTH
U.S. Magistrate Judge

---

[8] That sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."